We'll hear Newman v. Jewish Agency for the Thrill. Good morning, Your Honor. May it please the Court, I'm Saul Roffe. I'm for the appellant and plaintiffs in this action. This action concerns gentlemen who are alleging that they were harmed in the United States by certain acts in Israel in conjunction with certain fundraising acts by other defendants in the United States. The action is brought against— Are you talking about divorce proceedings in Israel? Well, specifically— The first part? Divorce proceedings do play a role in it, but the issue is primarily debts and debt collection. You're trying to sue these judges and officials for their roles in divorce proceedings and collection efforts in Israel? We're trying to sue debt collectors, not judges, for acts beyond their authority. What we've alleged is that, among other things, they've created fictitious debts and to create their jurisdiction. You claim that those debts are fictitious because the divorce decrees were obtained through fraud or other improper means? What we're claiming is, among other things, that these debts are not part of the divorce decrees. Why are you suing the Israeli judge and the Israeli officials? What's the claim against them? The claim against them is they're falsely charging the plaintiffs, in this case, with not paying debts and having them arrested, harassing their families— In the course of legal proceedings in Israel? No, in the course of debt collections. These are not legal proceedings, per se. They're debt collections. This is a debt collection office. It's not a judge. It's not a judge— I'm asking about the Israeli officials that you've named in the complaint. They're debt collectors. They're not judges. The only person we've named that is not in the debt collection office is the former Prime Minister, Tzipsi Livni. I apologize if I screwed up her name, but because she was in charge of this department during parts of the time that these things were occurring. How many of these cases have been brought around the country? This is the only RICO case I'm aware of. How many other cases have been brought around the country based on these facts, these factual allegations? Uh, probably three or four. Weren't there five in Texas, Wisconsin, Illinois? Weren't there some in California as well? I'm not aware of them all being on the same fact. Are they all dismissed? Yes. What's your good faith basis for bringing this case? We're acting under a different statute, Your Honor. And what we're saying, basically, is that fundraising is being done in the United States by certain defendants. And that fundraising is being used to assist the debt collectors in remaining in office, and then creating a scenario where they can fundraise off the false charges of the plaintiffs being deadbeat dads, per se. Uh, even in cases where the fathers were able to demonstrate they're fully paid up, new debts were created out of whole cloth by these people we're alleging. And that gave them the jurisdiction to arrest them, to take their passports away. In some cases, they harassed the parents, especially if the plaintiff was in the United States at the time, to collect funds that were not due to them. And in at least one case, they forced the parent to put their child in a school of one of the fundraising defendants, Namath, and pay that school. So the plaintiffs are alleging these facts and that they're there for extortion. There's money laundering and other allegations under RICO. And we're claiming that this is a RICO claim because we have an association, in fact, of various individuals and the fundraising defendants. And they're all playing their part in the RICO scheme, which is to get money out of the plaintiffs, in essence. And I have nothing further at this time. Thank you. We'll hear from you. Good morning, Your Honors. I'm Reeves Anderson from Arnold and Porter. I'm here today on behalf of the government of Israel to represent the 13 Israeli government officials who are named in the suit, a former justice minister, a judge, and 11 other public servants. To clear up one factual question that was raised just a moment ago, when he says debt collectors, these are all officials of the Israeli government. They are registrars of the Israeli Collection and Enforcement Agency. They are government officers. There are three points I'd like to address today. The first, the district court properly dismissed this case on numerous dispositive independent grounds, all deriving from the fact that Israeli citizens have sued Israeli officials for their official acts in Israel pursuant to Israeli law. The second point I want to address is that this case does not arise in a vacuum. It comes on the heels of 11 prior meritless related cases filed throughout the United States against Israel, its officials, and numerous charities. Those are listed in footnote one of the red brief on page three. Third, the district court's pre-filing order was a reasonable and proportionate response to that vexatious litigation campaign. It was a narrowly tailored injunction that modeled off the circuit's precedence and also... As to the pro se plaintiff, he only has one prior action? That's correct, Your Honor. Our cases suggest that you need to have a history of frivolous and vexatious litigation to warrant a pre-filing injunction. So, Your Honor, in Safir v. U.S. Lines, you set forth five factors, the first of which is a history of vexatious litigation. Mr. Eliyahu, you've never set forth sort of a numerical threshold if other factors counterbalance that. And so, with respect to Mr. Eliyahu, he sued the state of Israel on the exact same facts, cast not as a RICO claim then, but while that appeal was pending in the Ninth Circuit after being dismissed as implausible and borderline frivolous, he joined this campaign. He joined this suit 3,000 miles away, raising the exact same complaints. We have a case that imposes such an injunction based on only one prior lawsuit? We're not aware of any case with that numerical, but there are a couple other factors that I think counterbalance that that the district court recognized below, both the motive and the burden prong. So, the motive here is whether there's an objective, good-faith expectation of prevailing. There is none. When my friend said that this is the first RICO case, it's not. There were three other prior RICO cases filed in Pennsylvania. They were dismissed. The complaint here was copied verbatim from those. Was Mr. Rafay involved in those cases? Not that I'm aware of, Your Honor. And so, the second is the burden. I think... This complaint here tracks the complaints in those other three cases? Yes, Your Honor. We actually, in our red brief, we show where the complaint lifted verbatim a laundry list of predicate acts that have no connection whatsoever to this case. Those were taken from the complaint in the Issachar case in Pennsylvania. Weisskopf is one of those. Those cases were brought by a man named Mr. Ben Issachar in Pennsylvania. Three times, twice, it was dismissed to a sponte. But those plaintiff allegations were lifted from that complaint into this one. That case went nowhere. They knew, objectively, this case would go nowhere either. So, I mean, is your point, then, that these prior cases, although Eliyahu is not a plaintiff in any of those prior cases other than his own, that the frivolous nature of them and the prior rulings, knowledge of that is imputed to Eliyahu? Are you suggesting that? I think it goes to whether there's an objective good faith basis that they expect to prevail. And recognizing the landscape upon which this case is brought, both for foreign immunity, the lack of personal jurisdiction, failure to state a claim in those 11 prior cases, this builds upon that. And the burden is the other point. This is, I think, what the district court really glued into below. The one different quality of this case is it involves foreign sovereign immunity. And the attendant, so foreign sovereign immunity is intended to protect against the attendant burdens of litigation, not just protection against liability. The entire purpose of these suits, I submit, is to impose the attendant burdens of litigation. The costs here are being borne by the Israeli taxpayers. You have Israeli judges, Israeli officials, with a lawsuit an ocean away, hanging over their heads for years. Mr. Eliyahu's case, although it had no chance of prevailing in California, went on for more than three years. This case has been pending for two and a half years. And so the restrained injunction here is to balance all of those factors. But the injunction is on the named plaintiffs in this action, right? On two of the named plaintiffs. Yes, Your Honor. And so nothing would prevent them from finding a new plaintiff who's willing to adopt all the prior pleadings and just do this all over again. You're right, Your Honor. This is a game of whack-a-mole. And we are trying to be measured in our response to the two that have filed duplicative and numerous suits. So there are five other plaintiffs that joined this suit. The injunction does not extend to them. This was their first suit. And it may be that more escalating sanctions may be necessary down the road. But Israel's objective here is not retribution. It's judicial peace.  They're required to submit a proposed new complaint to Judge Pauly or Judge Pauly's designee and submit that it's not frivolous. This new suit is not designed to harass. If they have sued some of the defendants that are named in the next complaint, they must say so. They must identify, are they suing Israeli officials? I get that. But the difference between Eliyahu and the other plaintiffs who were not subject to this injunction is that he filed another suit once, right? That's correct, Your Honor. There's no other difference. There is. Correct. There is the numerosity that he has done this once before. I am hopeful that the plaintiffs who have seen their case dismissed here and see no potential for recovery and they shouldn't be suing Israel officials in the United States won't do it again. The ones who do, I think there needs to be measured repercussions. And again, the options here are do you impose monetary sanctions on plaintiffs who already complain that they can't pay alimony and child support and other debts that are incurred in Israel? Or do you take a more measured approach and say, if you're going to continue this campaign, you just need to clear it through a federal judge. Represent that you're not here to harass. I get that. So did you ask for a filing injunction with respect to the other plaintiffs? We did not, Your Honor. We only sought it with respect to David Weisskopf and Etienne Eliyahu. Do you think you could have made these same arguments you're making with respect to Eliyahu for the other five? I believe we could have. But again, we want to discourage the repeated vexatiousness. Again, as a first step. And if this game, if I'm back here two or three years from now, it may be a different injunction that I'm asking this Court to uphold. But we— It seems to me that you're saying it's whack-a-mole. So the way to defeat the injunction that's been imposed here or in the future, given the standards, is to just every time add a new plaintiff. And there'll be an injunction against the ones who filed before, but the new plaintiff won't. He'll get to file again, bring in a couple more people, and we just do this forever. So is a district court permitted to say, enough, I know what's going on here, and you're all precluded from bringing actions without permission? Absolutely. The district court is absolutely entitled to do that. And if this court— But you didn't ask the district court to do that? We did not ask the district court to do that. And again, that's the point. The district court here recognized this case for what it is. It's an attempt to weaponize the U.S. Judiciary against Israeli officials and the charities that support Israel's child welfare and family law programs, and to impose costs on Israeli taxpayers as retribution for what plaintiffs perceive as slights in Israel. And we think that this is a measured, good first step to thwart that kind of abuse in the U.S. Judiciary. If there are no further questions, we ask the Court to affirm. Thank you. Mr. Roth, have you reserved some rebuttal? Just a couple of things, Your Honors. Were you aware of these RICO cases, the three other RICO cases? No, I was not, Your Honor. But your complaint apparently is lifted from the complaints on those other actions? I did not draft this complaint, Your Honor. I was brought in when the case came to argument. Up here, you mean? And at the district court. I handled the argument in the district court, and I am handling this argument. I didn't . . . I played no role in drafting the complaint. And I was not aware of the other cases that apparently had different plaintiffs than the ones here. And I would submit that . . . Apparently, identical allegations, that word. I would submit that if a pro se plaintiff is researching a case, they might look at other complaints and see what they look like, and take allegations that were similar to theirs. There are counsel defendants in this case as well. Your clients? Yeah, my client . . . Counsel below? And there was a lawyer who drafted the . . . No, no. That's what I was saying earlier. No lawyer drafted this complaint. The only lawyer that I'm aware of that was involved in this complaint was me, and I was brought in on the eve of oral argument down below. Well, did you review the complaint before you . . . I reviewed this . . . . . . on the case? I reviewed this complaint, yes. But I did not review the Pennsylvania complaints. And as I said, I don't see how if a plaintiff has substantially similar circumstances, they can't take allegations from a complaint they didn't draft and put it in, especially a pro se one. Not if they're deemed and held to be frivolous. And if a lawyer comes in and takes over the case, I would think it would be incumbent upon the lawyer to check it out. I was not aware of the Pennsylvania actions in any event. They weren't actions of my clients, so I can't speak to them at all. And I would also just like to point out, yes, the debt collectors may be Israeli officials in a debt collection office, but they're not judges, which is what you asked me about. And we're claiming they exceeded their authority in imposing non-existent debts. Are they public servants carrying on their duties? We're saying they exceeded their duty.